# United States District Court

## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| v. | |
| | CASE NUMBER: 1:16-mj-00757 |
| **MARIA MORENO** | -01 |
| **ISRAEL PINEDA-MORENO** | -02 |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about October 24, 2016, in Marion County, in the Southern District of Indiana defendants did,

**Count 1 as to Defendants MARIA MORENO AND ISRAEL PINEDA-MORENO:** Conspiracy to Possess with Intent to Distribute and/or Distribute 1 Kilogram or More of Heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

**Count 2 as to Defendants MARIA MORENO AND ISRAEL PINEDA-MORENO:** Conspiracy to Possess with Intent to Distribute and/or Distribute 5 Kilograms or More of Cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and

**Count 3 as to Defendant MARIA MORENO:** Laundering Monetary Instruments in violation of Title 18, United States Code, Sections 1956 and 1957.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached AFFIDAVIT

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent Kimberly C. Gaczkowski, DEA

**Sworn to before me, and subscribed in my presence**

October 26, 2016          at   Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge          _____
**Name and Title of Judicial Officer**                **Signature of Judicial Officer**

## **AFFIDAVIT**

I, Kimberly C. Gaczkowski, a Special Agent with the United States Drug Enforcement Administration (DEA) being duly sworn, deposes and states as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration (DEA), United States Department of Justice. As such, I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have been assigned to DEA since May of 2003, and I am currently assigned to the DEA Indianapolis District Office, Indiana.

2. My official DEA duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848, as well as federal money laundering laws, including but not limited to, Title 18, United States Code, Sections 1956 and 1957. I have received special training in the enforcement of laws concerning controlled substances and money laundering as found in the United States Code. Some of the specialized training I have received includes, but is not limited to, classroom instruction concerning narcotics smuggling, money laundering investigations and conspiracy and complex investigations. I have been involved in various types of electronic surveillance, including the interception of wire communications, the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, the laundering and concealing of proceeds from drug trafficking and the street gangs who participate in these illegal activities.

3. As a result of these investigative activities, I have conducted and participate in numerous investigations with DEA that have resulted in the seizure of multiple kilograms of heroin, cocaine, and methamphetamine, as well as thousands of pounds of marijuana. I am familiar with and have participated in all the normal methods of investigation, including but not limited to visual surveillances, questioning of witnesses, controlled deliveries, undercover buys, execution of search and arrest warrants, management and use of informants, pen registers and Title III Investigations.

4. The information set forth in this Affidavit is based upon my participation in this investigation, interviews of witnesses, review of law enforcement reports, discussion with other law enforcement officers, information provided by confidential informants, review of video recordings and my experience and training. This affidavit does not set forth each and every fact I have learned during this investigation, but rather is provided solely for the purpose of establishing probable cause to support the complaint in this matter.

## OVERVIEW OF INVESTIGATION

5. This Application is submitted in connection with a controlled substances investigation being conducted by DEA Indianapolis Group 51, the Internal Revenue Service Criminal Investigation Division (IRS-CID), the Hamilton Boone County Drug Task Force (HBDTF) and other law enforcement agencies concerning a drug trafficking organization involving Israel Pineda-Moreno, Maria Moreno, and others. Your Affiant has participated in the ongoing investigation concerning Pineda-Moreno's illegal activities.

6. This investigation has targeted the Pineda-Moreno Drug Trafficking Organization (DTO). To date, agents have identified Moreno as a member of a poly-drug trafficking organization operating in Indianapolis, Indiana.

7. The investigation began when, during the period of time from December 2015 to July 2016, investigators conducted a narcotics investigation targeting Eustorgio Cervantes and others. Cervantes was

receiving kilogram quantities of cocaine and distributing them in the Indianapolis area. During the course of the investigation, agents/officers learned that a Mexican narcotics trafficking organization was shipping the narcotics to Indianapolis through routes in Texas and Wisconsin. Furthermore, agents/officers learned that narcotics proceeds were moved through wire remitters and also bulk cash shipments often transiting through Wisconsin. In July 2016, Cervantes and two other members of the organization were arrested on federal narcotics charges and subsequently indicted in U.S. District Court, Southern District of Indiana, in cause number 1:16-cr-151-LJM-DKL. In total, over 14 kilograms of cocaine and over $227,000.00 in narcotics proceeds destined for Wisconsin were seized during the investigation targeting Cervantes. During a post-arrest interview on July 2, 2016, and July 3, 2016, Cervantes stated that sometimes drugs are delivered to him in Indianapolis from Wisconsin.

8. During the course of the investigation targeting Cervantes, investigators identified Maria Moreno (MORENO) as an individual using wire remitters to send proceeds from drug sales for Cervantes from Indiana to Mexico. During his post-arrest interview, Cervantes stated MORENO sends money to Mexico for the organization, and that she is aware the money is drug proceeds. Cervantes also stated that MORENO was recruited by individuals in Mexico and that MORENO sends money every 2 to 2 1/2 months. Cervantes admitted MORENO sent a total of $20,000 ($10,000 on two separate occasions) for Cervantes. Cervantes indicated MORENO drives a Buick Lacrosse and that she resides in an apartment located near 34th Street and Moller Road in Indianapolis. Cervantes stated that they use two businesses, Tienda Morelas and Zacatecas, to send money to Mexico. If they transfer money domestically, they use Walmart. Prior to his arrest, agents/investigators conducted surveillance on Cervantes. During the course of that surveillance, MORENO was observed on several occasions. Agents/Officers were able to identify her residence as 3243 Moller Road through surveillance and public database checks. Furthermore, on July 2, 2016, during a search of Tres Amigos Auto Body Repair, Eustorgio Cervantes' business, agents/officers recovered a money order receipt bearing the name "Maria Moreno-Pineda". In September and October 2016, agents/officers identified Israel Pineda-Moreno (PINEDA-MORENO) as a probable relative of MORENO who had recently moved in with MORENO in Indianapolis. Agents/officers believe PINEDA-

MORENO moved from North Carolina to reestablish the distribution network that was disrupted when Cervantes was arrested.

## FACTUAL BASIS SUPPORTING PROBABLE CAUSE

### Money Laundering Activities of Maria Moreno

9. On June 16, 2016, the Honorable William T. Lawrence, Judge, United States District Court, Southern District of Indiana, issued an Order in cause number 1:16-mc-0043-WTL-TAB, authorizing the interception of wire communications (voice communications only) for telephone number (317) 664-3141 (Target Phone 3, used by Cervantes). Shortly thereafter, agents of the Drug Enforcement Administration began monitoring Target Phone 3 as part of the criminal investigation of the Camacho-Cervantes Organization.

10. On June 17, 2016, at approximately 1:01 p.m., Cervantes, using Target Phone 3, had a telephone conversation (Session #75) with UM-1490, a/k/a "Chente," who was using Mexican telephone number 52-1-557-509-1490. During the course of the investigation, UM-1490 has been identified as a source of supply of controlled substances to Cervantes. During the call, Cervantes stated, "Hey these ones that are going to…the problem was on the internet. Um, I don't know what happened because it sort of, uh, [U/I] but these are the other two remittances from [U/I] Palacios Silva." UM-1490 responded simply, "Mm-hmm." Cervantes continued, "Okay. 17410208791." UM-1490 then asked, "Ok. How much is that?", to which Cervantes replied, "The amount is 1843380. And the other one. Sender is Jose Castro Palestina." UM-1490 responded, "Um, is that the person whom it was sent to? I didn't understand." Cervantes answered, "Yes, also the same person, Jose Castro Palestina." Later in the call, Cervantes clarified, "Yes. Uh-huh. These last two (2) were sent by the same person." UM-1490 stated, "Ok. 17 what?" Cervantes then replied, "17410209534. And the amount is the same." Based upon this conversation, your Affiant believes that Cervantes contacted UM-1490 to inform him that two wire transfers were sent to UM-1490 by Jose Castro Palestina and that Cervantes provided UM-1490 with both of the confirmation numbers for those transactions. Based upon your Affiant's knowledge and experience, in order for wire transfers to be completed, the individual retrieving the funds are required to have both the

name of the individual sending the funds, as well as the unique confirmation number assigned to the transaction by the wire remitter.

11. On June 20, 2016, at approximately 2:33 p.m., Cervantes, using Target Phone 3, had a telephone conversation (Session #427) with UM-1490, a/k/a "Chente," who was using Mexican telephone number 52-1-557-509-1490. During the call, UM-1490 stated, "I called you on the other one and it was turned off." Cervantes replied, "Yeah, I'm at the junk yard right now." UM-1490 then stated, "Oh. Just to tell you that this fucking bank didn't want to give it to [U/I]. Tell Maria to take it out and send it through Coppel." Cervantes stated, "Ok. When she gets out of work I will send her a text message so she should come see me." Later in the conversation UM-1490 stated, "I will call you later. Tell Maria to send it through Coppel.," and "That bank is no good. They don't want to give it to us." Based upon this call, your Affiant believes that UM-1490 was unable to collect previous wire transfers sent by MORENO. Later in the call, UM-1490 directed Cervantes to have MORENO cancel the original wire transfer and to re-send it through Coppel, another Mexican wire remitter. During the call, Cervantes agreed to contact MORENO and have her re-send the wire transfers.

12. Later on June 20, 2016, Cervantes, using Target Phone 3, had a telephone conversation with MORENO, who was using telephone number (317) 986-0147. During the call, Cervantes stated, "They weren't able to collect that." To which MORENO stated, "Why is that?" Cervantes then stated, "Because the bank doesn't want to pay it." MORENO stated, "Elektra?" To which Cervantes replied, "Uh-huh." MORENO then stated, "But that's not our error." To which Cervantes stated, "I know it's not our error. That guy told us to change the bank." MORENO asked, "Change bank?" Cervantes replied, "Uh-huh." MORENO then asked, "Cancel it?" To which Cervantes replied, "Cancel it and resend it. Go see what we can do at the store." Later, MORENO asked, "To where?" Cervantes stated, "To Coppel. He said if we could send it to Banorte to send it Banorte if not to Coppel." Based upon this part of the call, your Affiant believes that Cervantes contacted MORENO as he was instructed in the previously detailed call with UM-1490, and informed MORENO that the previous wire transfers needed to be cancelled and re-sent through Coppel as the original wire remitter, Elektra, was refusing to release the funds.

13. Later in the same call (Session #457), MORENO stated, "Let me see if I can find the person, if the man is kind enough to send the money and [U/I]. Cervantes stated, "Yes please. I will give you the information that the fucker gives me because I know it's not your fault or mine." MORENO then stated, "If they know that you can't send it through there they don't have to [U/I] because then they will start investigate and all that shit." Cervantes then stated, "Go and see what can be done Mari and let me know so I can tell that guy too." Based upon this portion of the call, your Affiant believes that MORENO would need to locate the unknown third-party who actually conducted the wire transfer(s) they were referencing in the call and ask him to re-send the funds.

14. Later still in the same call (Session #457) on June 20, 2016, MORENO stated, "Let me finish because I got in the shower. Once I finish I will pick the man up and we will go cancel it. I'll figure out what lies I tell the man so he can go and cancel it and we'll see if he can send it to where you telling me…" To which Cervantes stated, "Okay. Bye." Based upon this portion of the call, your Affiant believes that MORENO informed Cervantes that after she had completed her shower, she would pick up the unknown male who had completed the original transactions and travel together to cancel the transaction(s). MORENO then informed Cervantes that she would need to make false statements to this unknown male and re-send the funds as directed, presumably to keep the unknown male from asking questions about the transaction(s) and its purpose.

15. On June 21, 2016, at approximately 7:32 p.m., Cervantes, using Target Phone 3, had a telephone conversation (Session #587) with MORENO who was using telephone number (317) 986-0147. During the call, MORENO stated, "I couldn't do anything yesterday because the man got there late. But we went right now and he canceled and re-sent it through Coppel. They said to call in an hour so they could give him the new confirmation. So I'm going to wait for the man to call in a hour so he can give me that." To which Cervantes stated, "Alright, let me know." Based on this conversation and previously intercepted conversations, your Affiant believes that MORENO contacted Cervantes to inform him that she was unable to cancel and re-send the wire transfers referenced above because the unknown male who had originally conducted the transactions arrived too late. Further, MORENO informed Cervantes that she and the

unknown male had just recently canceled the transaction(s) and re-sent the funds through Coppel. MORENO explained that she expected to receive the new confirmation number from the unknown male in approximately one (1) hour and at that time, she would provide them to Cervantes.

16. Later on June 21, 2016, at approximately 9:25 p.m., Cervantes, using Target Phone 3, had a telephone conversation (Session #591) with MORENO, who was again using telephone number (317) 986-0147. During the call, MORENO stated, "That's been done. I'll send you that right now." Later in the call, Cervantes stated, "Okay if not I'm over here, not exactly home, I'm outside. When I go through there and you can give me the receipts." Based upon this call and previously intercepted calls, your Affiant believes that MORENO called to confirm that the transactions had in fact been completed and that she would send the confirmation numbers shortly, "I'll send you that right now." Cervantes continued in the conversation to arrange for MORENO to meet him the next day to provide him the receipts from the re-sent wire transfers.

17. During the course of the investigation, based upon the intercepted calls described herein and others, agents obtained wire transfer records from Intercambio Express, a wire remittance company which does business in Indiana and elsewhere. Those records reflected that on June 16, 2016, two international wire transfers were sent by Jose Castro Palestina from Los Dos Hermanos, LLC, located at 5437 W. 34th Street, Indianapolis, Indiana to Oldai Palacio Silva in Michoacan, Mexico in the amount of $1,000 United States currency (including a $10 wire transfer fee). The Intercambio Express records also reflected that the confirmation numbers (or PINs) for these transactions were 17410208791 and 17410209534, respectively. The information obtained from Intercambio Express matches that provided to UM-1490 by Cervantes during intercepted calls on Target Phone 3 on June 17, 2016. Further, these transactions were conducted through Mexican wire remitter, Elektra and were in fact canceled on June 21, 2016 within two minutes of each other.

18. The records from Intercambio Express also showed that on June 21, 2016, two additional wire transfers (Confirmation numbers 17410745941 and 17410746121) were conducted by Jose Castro Palestina at Los Dos Hermanos, Indianapolis, Indiana, in the amount of $1,000 United States currency each

(again including a $10.00 wire transfer fee). The transfers were again sent to Oldai Palacio Silva in Michoacan, Mexico however, on this date, the wire transfers were conducted through Mexican wire remitter Coppel. This information obtained from Intercambio Express corroborates the intercepted telephone calls between UM-1490 and Cervantes and later, between Cervantes and Moreno as detailed above.

19. During a post-arrest interview on July 2, 2016 and July 3, 2016, Cervantes told investigators that MORENO sent money to Mexico for the drug trafficking organization and that she was aware that the funds were proceeds of drug trafficking. Cervantes stated that individuals in Mexico recruited her for this purpose approximately 4-5 months before his arrest. Cervantes stated that she has sent approximately $20,000 United States currency for Cervantes. During a search of Cervantes' business, Tres Amigos Auto Body Repair, located at 2702 W. 10th Street, Indianapolis, Indiana, an Intercambio Express wire transfer receipt was located by law enforcement. This receipt showed that on June 26, 2016, MORENO (listed on the receipt as "Maria Moreno Pineda") transferred via wire $1,000 Unites States currency to Elesar Villafana Velasquez in Michoacan, Mexico, with confirmation number 17411142189. As part of a download of Target Phone 3 subsequent to Cervantes' arrest on July 2, 2016, a text message conversation was found between Cervantes and UM-1490. In the conversation, on June 29, Cervantes sent an outgoing text to UM-1490 (in Spanish) that in general reflected MORENO's name, the recipient name Elesar Villafana Velasquez, and the matching confirmation/PIN number of 17411142189 from the receipt found during the consent search at Tres Amigos Auto Body Repair.

### Surveillance of Israel Pineda-Moreno on October 24, 2016, and Subsequent Heroin Seizure

20. On October 24, 2016, at approximately 4:36 p.m., agents/officers conducted surveillance at 3243 Moller Road, Indianapolis, IN. At that time, Israel Pineda-Moreno (PINEDA-MORENO) was observed leaving the residence carrying a black and white plastic bag that appeared to contain a weighted object inside. PINEDA-MORENO was accompanied by Maria Moreno and an unknown male later identified as Cesar Eduardo Munoz Mireles. PINEDA-MORENO, MORENO and Mireles were observed getting into a black GMC Envoy and leaving the area.

21. On October 24, 2016, at approximately 5:30 p.m., the driver of the GMC Envoy committed numerous traffic violations and was stopped by a law enforcement officer driving a marked Carmel Police Department car on U.S. 31 North in Carmel, Indiana. During the course of the traffic stop, it was determined that Mireles, who was the driver of the Envoy, had an outstanding warrant for his arrest.

22. Carmel Police Department Officer Ben Fischer who was on the scene for the traffic stop, had his trained narcotics-detecting canine, Wazir, conduct a free air sniff of the exterior of the Envoy. Wazir gave a positive alert for the odor of narcotics coming from the interior of the Envoy.

23. A search of the Envoy revealed what appeared to be the same black and white plastic bag that PINEDA-MORENO had carried from the residence located at 3243 Moller Road earlier in the afternoon. A closer inspection of the black and white plastic bag revealed what was later field tested and weight and found to be approximately 545 grams of heroin secreted inside the bag.

24. After the discovery of the 545 grams of heroin, PINEDA-MORENO, MORENO, and Mireles were all taken into custody by the Carmel Police Department.

25. All three individuals were given their Miranda Warnings by Carmel Police Officers. During a post arrest statement, MORENO stated that the GMC Envoy is her vehicle. MORENO further stated that she lives at 3243 Moller Road with her boyfriend (Mireles), and that her cousin, PINEDA-MORENO, came from California to visit.

**Execution of Federal Search Warrant at 3243 Moller Road, Indianapolis, Indiana on October 24, 2016**

26. On October 24, 2016, your Affiant applied for and received a search and seizure warrant under Case No: 1:16-mj-00755 for 3243 Moller Road, Indianapolis, Indiana. Agents/Officers executed the search warrant at approximately 8:15 p.m. that same day. During the search warrants, agents/officers discovered 10 brick shaped packages of suspected narcotics in an upstairs bedroom closet. Documents and clothing observed in this bedroom indicate that it is the bedroom utilized by MORENO. Two of the bricks were smaller with similar packaging. Agents/Officers later field tested both of the smaller packages and found they contained heroin. The total gross weight of the two smaller packages was approximately 2,533

grams. Agents/officers also field tested all of the remaining eight packages. The results of the field test showed the eight packages contained cocaine. The total gross weight of the remaining eight packages was approximately 9,231 grams. Also found in the bedroom closet was a box containing approximately 5 pounds of marijuana. Agents/Officers further discovered U.S. Currency believed to be approximately $5,000.00 in the bedroom closet and approximately $2,000.00 in a pair of pants in the living room.

27. Based on the foregoing, your affiant submits the probable cause exists for the arrest of Maria Moreno on Laundering Monetary Instruments in violation of Title 18, United States Code, Sections 1956 and 1957; and the arrest of Maria MORENO and Israel PINEDA-MORENO for Conspiracy to Possess with Intent to Distribute and/or Distribute 1 Kilogram or More of Heroin, and Conspiracy to Possess with Intent to Distribute and/or Distribute 5 Kilograms or More of Cocaine, in violation of Title 21 United States Code, Sections 841(a)(1) and 846.

FURTHER YOUR AFFIANT SAYETH NOT

_____
Kimberly C. Gaczkowski, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 26 day of October, 2016.

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana